JUDE G. GRAVOIS, Judge.
| ¡Defendant, Shawn Murphy, appeals his conviction and sentence following the trial court’s denial of his motion to suppress evidence. For the following reasons, we affirm defendant’s conviction and sentence. We further remand the matter for correction of errors patent as noted herein.

*3
PROCEDURAL BACKGROUND

On February 7, 2008, the Jefferson Parish District Attorney filed a bill of information charging defendant, Shawn Murphy, with possession of cocaine in violation of La. R.S. 40-967(C).[1] Defendant pled not guilty at his arraignment on March 12, 2008. On October 21, 2008, defendant subsequently withdrew his not guilty plea, and pled guilty to possession of cocaine pursuant to State v. Crosby.[2] Defendant was thereupon sentenced to five years imprisonment at hard labor. The sentence was ordered to run consecutively with the sentence imposed on defendant in case number 08-4532. On that same date, the State filed a habitual offender bill |sof information, alleging that defendant was a second felony offender. After being advised of his rights, defendant admitted that he was a second felony offender, the trial judge vacated his original sentence and sentenced defendant to ten years imprisonment at hard labor.
In defendant’s first appeal, this Court found that the trial court erred in dismissing defendant’s motion to suppress without an evidentiary hearing and without ruling on the admissibility of the evidence. State v. Murphy, 09-139 (La.App. 5 Cir. 10/27/09), 28 So.3d 388, 390-91. This Court remanded the case for the trial court to conduct a suppression hearing and for a ruling on the merits thereof, reserving defendant’s right to appeal an unfavorable ruling and appeal his conviction and sentence on the basis of his original Crosby reservation. Murphy, 28 So.3d at 391.
On February 10, 2010, a hearing was held regarding defendant’s motion to suppress evidence, and according to the minute entry, defendant’s motion to suppress evidence was denied. However, according to a notation in the February 10, 2010 transcript, the trial court’s recording system malfunctioned during the cross-examination of Detective Klein, and no further audio was recorded. Additionally, arguments made after the completion of the testimony were not available for transcription, and the ruling with any reasons from the court on the motion to suppress was also not transcribed.,
On March 28, 2013, defendant was granted an out-of-time appeal. In defendant’s second appeal, this Court vacated the trial court’s judgment on defendant’s motion to suppress after finding that it could not review the merits of defendant’s appeal because of the incomplete suppression hearing transcript. State v. Murphy, 13-509 (La.App. 5 Cir. 12/19/13), 131 So.3d 1013. This Court remanded the matter to the trial court for a new, fully recorded hearing on ^defendant’s motion to suppress. Further, this Court ordered that, if the trial judge granted defendant’s motion to suppress after a new evidentiary hearing, then the trial judge was to vacate defendant’s guilty plea. However, if the trial judge again denied defendant’s motion to suppress, then defendant maintained his right to seek appellate review of that judgment. Murphy, 131 So.3d at 1016.
On February 19, 2014, the trial court held another hearing on defendant’s motion to suppress evidence and again denied *4 defendant’s motion.[3] On February 21, 2014, defendant filed a written notice of appeal, which was granted on the same date. Here, in his third appeal, defendant contends that the trial court should have granted his motion to suppress evidence.

FACTS

Defendant pled guilty, and did not proceed to trial. As such, the facts are taken from the bill of information, which provides that on or about January 4, 2008, defendant and co-defendant Jodylynn Fus-sell “‘knowingly and intentionally possessed] a. controlled dangerous substance, to wit: Cocaine.’ ” Murphy, 09-139 at 2, 28 So.3d at 389.

MOTION TO SUPPRESS HEARING

On February 19, 2014, a, hearing wás. held to address defendant’s motion to suppress evidence. At the hearing, Lieutenant Shane Klein of the Jefferson Parish Sheriffs Office Narcotics Division testified on behalf of the State that he participated in the investigation that resulted in the arrest of defendant and the seizure of evidence. Lieutenant Klein explained that Detective Michael Tucker was the officer who wrote the report in this case. According to Liéutenant Klein, Detective Tucker conducted an investigation at a residence located at 7404 St. Rita frStreet and authored a warrant to search the residence. Lieutenant Klein testified that while preparing to execute the search warrant and during surveillance of the residence, Detective Tucker received information from a confidential informant, who was located inside of the residence under surveillance, that a black male driving a burgundy Chrysler Sebring would deliver crack cocaine to the residence. Lieutenant Klein noted that the vehicle’s description appears in the police report. He also explained that the search warrant for the residence was based on a controlled purchase of crack cocaine that officers conducted at the residence.
According to Lieutenant Klein, within a short period of time after receiving the information, a vehicle matching the description received appeared at the residence that was under surveillance. Lieutenant Klein stated that defendant, who was the driver, exited the vehicle , and entered the residence -for a couple of minutes and then departed. Lieutenant Klein testified that a person quickly entering and exiting a residence under surveillance would be consistent with a person delivering narcotics. He further stated that most importantly, it was consistent with the information received from the confidential informant located inside of the residence. Lieutenant Klein explained that it was the totality of all of those facts that led to the investigatory stop. Lieutenant Klein stated that defendant was stopped not far from the residence, and he asked defendant to exit the vehicle. He stated that upon defendant’s exiting his vehicle,-' crack cocaine fell to the ground.
On cross-examination, Lieutenant Klein acknowledged that the police report did not reflect that the informant was located inside of the residence or that the same informant provided information regarding the narcotics both inside of the residence and inside of defendant’s vehicle. He explained that information would not be included in. the report because it would have *5 risked the safety of the informant at that time. Lieutenant Klein testified- that the information that the | sofficers were looking for a black male driving a burgundy Sebr-ing was transmitted over the police radio. Lieutenant Klein also acknowledged that his testimony at the previous hearing did not include that the vehicle’s description came • across the police radio before the officers observed the vehicle.
Lieutenant Klein acknowledged that de: fendant was not the target of the investigation and was not connected to the residence. He also explained that although the confidential informant did not give a specific time when the subject would arrive, his impression was that the subject would arrive soon, and defendant did arrive soon. Lieutenant Klein acknowledged that he did not stop defendant for a traffic violation and did not observe any criminal activity by defendant. He explained that he conducted the investigatory stop based on the information received from the reliable and credible confidential informant that was used in the past. On redirect, Lieutenant Klein testified that at the time of the stop, he had reason to believe that defendant had just distributed drugs.
After Lieutenant Klein’s testimony and closing argument by the defense, the matter was submitted. The trial court stated that the circumstances of this case were more than just a person walking in and out of a residence that was under surveillance. The court explained that defendant and defendant’s vehicle both matched the description provided by a confidential informant who had provided reliable information in the past. The court further stated that the activity was consistent with drug activity. Based on the circumstances, the trial court ruled that there was reasonable suspicion to stop defendant. The court further noted that the testimony reflected that the evidence fell out of defendant’s vehicle, and therefore, warrants were not required. The court denied defendant’s motion to suppress.

J¡ARGUMENTS ON APPEAL

Defendant argues that the trial court erred by not suppressing the evidence because Detective Klein made an illegal stop and arrest of defendant. Defendant asserts that there was no corroborating evidence, or legal or factual basis to support the stop. Defendant complains that Detective Klein could not personally attest to the confidential informant’s reliability because he depended on another detective who received the information from the confidential informant. Defendant asserts that the information that Detective Klein was lopking for a black man driving a burgundy Chrysler Sebring was not included in the initial report and not mentioned in Detective Klein’s previous testimony.
The State asserts that Officer Klein testified that the confidential informant was reliable, credible, and was used in the past. The State further asserts that the informant gave specific information as to the type and color of defendant’s vehicle. The State notes that Officer Klein testified that defendant’s behavior was. consistent with drug activity.
The State asserts that the informant’s first tip that crack cocaine was being sold from the residence was corroborated by a controlled purchase. The State argues that therefore the later tip that defendant would be delivering drugs was predictive information from which the officers could reasonably determine that the informant had inside information or a special familiarity with defendant’s affairs. The State asserts that the surveillance corroborated the time, place, and vehicle description provided by the informant and that the subsequent stop confirmed the presence of *6 drugs. The State argues that the corroborated information from the informant and the observations from the surveillance were sufficient to give the officers a reasonable suspicion to justify the stop of defendant.

\ ANALYSIS

The trial court’s denial of a motion to suppress is afforded great weight, and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Bellow, 07-824 (La.App. 5 Cir. 3/11/08), 982 So.2d 826, 829.[4] In a hearing on a motion to suppress, the State has the burden to establish the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Lewis, 12-902 (La.App. 5 Cir. 6/27/13), 121 So.3d 128, writ denied, 13-1926 (La.4/17/14), 138 So.3d 618.
The Fourth Amendment of the United States Constitution and Article 1, § 6 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. Nelson, 822 So.2d at 800 (citing State v. Flagg, 99-1004 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 526, writ denied, 00-1510 (La.3/9/01), 786 So.2d 117); State v. Snavely, 99-1223 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 956, writ denied, 00-1439 (La.2/16/01), 785 So.2d 840. In an effort to discourage police misconduct in violation of these standards, evidence recovered as a result of an unconstitutional search and seizure may not be used in a resulting prosecution against the citizen. Nelson, 822 So.2d at 800 (citing State v. Tucker, 92-2093 and 92-2130 (La.5/24/93), 626 So.2d 707, 710); State v. Duckett, 99-314 (La.App. 5 Cir. 7/29/99), 740 So.2d 227, 230.
However, an investigatory stop may be conducted when a police officer has a reasonable articulable suspicion of criminal activity. State v. Molette, 11-384 (La.App. 5 Cir. 11/29/11), 79 So.3d 484, 489 (citing Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); State v. Belton, 82-2061, 82-2120 (La.11/28/83), 441 So.2d 1195, 1198, cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The Terry standard, as codified in La. C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense, and demand that the person identify himself and explain his actions. Molette, 11-384 at 6, 79 So.3d at 489 (citing State v. Dickerson, 10-672 (La.App. 5 Cir.4/26/11), 65 So.3d 172, 176).
Reasonable suspicion is something less than probable cause to arrest, though it is more than an officer’s mere unparticularized suspicion or hunch of criminal activity. Molette, supra (citing State v. Williams, 10-51 (La.App. 5 Cir.7/27/10), 47 So.3d 467, 471, writ denied, 10-2083 (La.2/18/11), 57 So.3d 330); State v. Massey, 03-1166 (La.App. 5 Cir.1/27/04), 866 So.2d 965, 968. In making the determination of whether a police officer had reasonable suspicion, a reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person. Molette, 79 So.3d at 489 (citing State v. Burns, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1076). Factors that may support a reasonable suspicion for an investigatory stop include an officer’s experience, his knowledge of recent criminal patterns, and his knowledge *7 of an area’s frequent incidence of crimes. Molette, 79 So.3d at 489 (citing State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102).
Whether an informant’s tip creates a reasonable suspicion necessary to conduct an investigatory stop is determined under the totality of the circumstances. Molette, 79 So.3d at 489-90 (citing State v. Francois, 04-1147 (La.App. 5 Cir. 3/29/05), 900 So.2d 1005, 1010); see also Nelson, 822 So.2d at 801-02. This Court has held that a tip by an informant can supply reasonable suspicion if it accurately predicts future conduct in sufficient detail to support a reasonable belief |inthat the informant had reliable information regarding the illegal activity. The informant’s ability to predict the person’s future behavior goes to the informant’s reliability because it demonstrates inside information and a special familiarity with the person’s affairs. Molette, 79 So.3d at 490 (citing State v. Melancon, 03-514 (La.App. 5 Cir. 10/28/03), 860 So.2d 225, 229, writ denied, 03-3503 (La.4/23/04), 870 So.2d 297). In addition, the tip must be corroborated. Molette, supra (citing Francois, supra).
In Nelson, supra, a detective testified at the motion to suppress hearing that he received information from a confidential informant that a white Pontiac Grand Am with a large amount of cocaine would be en route to a certain McDonald’s restaurant. The officers set up surveillance at that location, and approximately 30 minutes later, the vehicle arrived in the parking lot. After the detective removed the defendant from the vehicle, advised her of the ongoing narcotics investigation and of her rights, and conducted a pat-down search, the defendant removed a large bag of off-white rocks from her person and handed it to the detective, who placed her under arrest. Nelson, 822 So.2d at 802.
On appeal, the defendant argued that the trial court erred in denying her motion to suppress evidence because the informant’s tip was insufficient. She further argued that the informant never disclosed how the information was obtained and that the officers were not informed that the defendant had committed any offense. Nelson, 822 So.2d at 799. This Court found that the tip from the confidential informant contained predictive information from which the officers could reasonably determine that the informant had inside information and a special familiarity with the defendant’s affairs. Further, this Court found that the information provided by the confidential informant was sufficiently corroborated |nby the information gained by the officers during surveillance when they observed a vehicle matching the description at the location approximately 30 minutes after obtaining the tip. Therefore, this Court concluded that the confidential informant’s tip was sufficient to establish reasonable suspicion to justify the initial stop. In addition, this Court found that probable cause existed to arrest the defendant because she was arrested after she produced the narcotics. Nelson, 822 So.2d at 802-03.
In the present case, the' officers obtained information from a confidential informant regarding drug activity at a certain residence and conducted surveillance at that location. The officers also conducted a controlled purchase of crack cocaine at the residence. During the surveillance and while preparing to execute a search warrant for the residence, the officers received an additional tip from the same confidential informant that a black male in a burgundy Chrysler Sebring would be delivering cocaine to the residence. Detective Klein testified that he heard the description of the subject and the vehicle on the police radio.
*8 Within a short time after the officers received the informant’s, tip, a vehicle matching that description arrived at the residence. Defendant entered the residence and exited only a couple of minutes later. Detective Klein explained that defendant’s behavior was consistent with delivering narcotics-and with the information provided by the confidential informant. Although he acknowledged that defendant had not committed a traffic violation -and that he did not observe criminal activity, Detective Klein also testified that he had reason, to believe that defendant had just distributed, drugs. After defendant drove away from the residence, Detective Klein conducted an investigatory stop and instructed defendant to exit" his vehicle. Upon defendant’s exiting of his vehicle, crack cocaine fell to the ground, and defendant ivas arrested. ;
| ^Defendant argues that Detective Klein could hot personally attest to the confidential informant’s reliability because another detective received the information from the informant. However, the informant’s reliability was shown when the predictive information was corroborated by thé controlled purchase inside of the residence and the arrival of defendant and his vehicle, both of which matched, the informant's description. . In addition, it appears that defendant questions the credibility of Detective Klein’s testimony at the February 19, 2014 motion to suppress hearing when he stated that officers were looking for a black male in a burgundy Chrysler Sebr-ing when defendant arrived at the residence. Specifically, defendant argues that the initial report and Detective Klein’s previous testimony faded to mention that the informant provided a description of the subject and the vehicle-that would deliver narcotics to the residence. The record reflects that while the police report includes the description of defendant and his vehicle, the report does not reflect that the description was provided by the informant prior to defendant’s arrival at the residence.[5] Also, it appears that Detective Klein testified at the previous hearing that the officers were not looking for a specific vehicle. However, during cross-examination at the February 19, 2014 hearing, Detective Klein explained that although the police report was written as if the description of defendant’s vehicle was only based on the officer’s observation, the officers knew that they were looking for a burgundy Sebring at the time.
The trial court’s determination as to the credibility■ of witnesses- on a motion to suppress is to be accorded great weight on appeal unless unsupported by the evidence. State v. Lemonte, 12-657 (La.App. 5 Cir. 1/30/13), 108 So.3d 1271, 1280. The determination of a witness’s credibility is within the discretion of the hstrier of fact who may accept or reject, in whole or in part, the testimony of any witness, and the credibility of witnesses will not be reweighed on appeal. State v. Calvert, 01-826 (La.App. 5 Cir. 2/26/02), 811 So.2d 1081, 1084 (citing State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056). Inconsistency in a witness’s testimony is only one of the factors the fact finder weighs in determining whether to believe a witness’s testimony. Calvert, 811 So.2d at 1084 (citing State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062 and 00-0150 (La.6/30/00), 765 So.2d 1066). Ae- *9 cordingly, this Court will not reweigh the trial court’s assessment of Detective Klein’s credibility on appeal. See Calvert, supra.
Based on the totality of the circumstances, we find that the tip from the confidential informant contained predictive information from which , the officers could reasonably determine that the informant had inside information and a special familiarity with defendant’s affairs. Further, the record shows that the information provided by the confidential informant was sufficiently corroborated by the information gained by the officers during the surveillance when they observed the subject and the vehicle matching the description arrive at the location within a short time after obtaining the tip. Therefore, the confidential informant’s tip was sufficient to establish reasonable suspicion to justify the investigatory stop. This assignment of error is without merit.

ERRORS PATENT REVIEW

The record was reviewed for errors patent, according tó La. C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following errors patent require corrective action.
The record reveals a conflict between the transcript and the minute entry/commitment. First, the transcript reflects that defendant admitted to being |uand was sentenced as a second felony offender. Although the minute entry/commitment reflects that defendant was “sentenced under Multiple Bill statute 15:529.1,” it does not reflect that defendant was sentenced as a second felony offender. Therefore, we remand this matter to the trial court to correct the commitment to reflect that defendant was sentenced as a second felony offender. See State v. Scott, 08-703 (La. App. 5 Cir. 1/27/09), 8 So.3d 658, 666, writ denied, 09-650 (La.12/11/09), 23 So.3d 910.
Second, the transcript also reflects that the enhanced sentence was ordered to run concurrently with the contempt charges defendant was serving, as well as his ten-year enhanced sentence in case number 08-4532. However, the commitment does not reflect that the sentence was ordered to run concurrently with the contempt charges. The transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983). Therefore, we remand for the trial court to correct the commitment to reflect that defendant’s enhanced sentence is to run' con-' currently with the sentence for his contempt charges. See State v. Jones, 07-512(La.App. 5 Cir. 12/27/07), 975 So.2d 21, 27, writ denied, 08-325 (La.9/26/08), 992 So.2d 982.
' We further direct-the district court to make the entries in the minutes reflecting these changes and direct the Clerk of Court to transmit the original of the minute entry/commitment to -the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department. See La. C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam).

^CONCLUSION

For the reasons assigned above," defendant’s conviction and sentence are affirmed. We further remand the matter for correction .of errors patent as noted herein,

CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.

. The record reflects that the bill of information was later amended to state that defendant was also known as “Don Murphy".

. State v. Crosby, 338 So.2d 584 (La.1976). On April 8, 2008, defendant’s pre-trial motions, including a motion to' suppress evidence, were dismissed' after he failed to appear in court as previously ordered. Defendant was charged with contempt of court, and after a hearing, was sentenced to six months flat time on August 14, 2008.

. The transcript from, the previous motion to suppress hearing held on February 10, 2010 was admitted as a joint exhibit during the February 19, 2014 motion to suppress hearing. The February 10, 2010 transcript re-fleets that the digital recorder stopped and nothing further could be retrieved from the system. Further, the transcript reflects that the redirect examination, closing arguments, and the trial court’s ruling were not recorded.

. See also State v. Nelson, 02-65 (La.App. 5 Cir. 6/26/02), 822 So.2d 796, 800, writ denied, 02-2090 (La.2/21/03), 837 So.2d 627 (citing State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 73, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118).

. The appellate record for defendant’s first appeal reflects that the Jefferson Parish Police Report was admitted as State’s Exhibit 2. It is noted that the record refers to the police report as both Exhibit I and Exhibit 2; however/ it appears that the poiice report is marked as Exhibit 2.