STATE OF LOUISIANA

VERSUS

CANDIDO BELTRAN ABREGO

NO. 21-KA-166

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 19-4422, DIVISION "I"
HONORABLE NANCY A. MILLER, JUDGE PRESIDING


December 01, 2021


**ROBERT A. CHAISSON**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Robert A. Chaisson, and Stephen J. Windhorst


<u>**AFFIRMED**</u>
    **RAC**
    **FHW**
    **SJW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Thomas J. Butler
     Matthew R. Clauss
     Joshua K. Vanderhooft

COUNSEL FOR DEFENDANT/APPELLANT,
CANDIDO BELTRAN ABREGO
     A. Bruce Netterville

**CHAISSON, J.**

Defendant, Candido Beltran Abrego, appeals his conviction and sentence for possession with intent to distribute cocaine. He specifically challenges the trial court's denial of his motion to suppress evidence and denial of his "Opposition to State's Motion to Seal and Request for Full Disclosure." In addition, defendant complains about the imposition of a duplication of records cost. For the reasons that follow, we find that defendant's arguments are either without merit or not properly before this Court for review. As such, we affirm defendant's conviction and sentence.

## PROCEDURAL HISTORY

On July 30, 2019, the Jefferson Parish District Attorney filed a bill of information charging defendant with possession with intent to distribute cocaine weighing twenty-eight grams or greater, in violation of La. R.S. 40:967(A). Defendant pled not guilty at his arraignment. Thereafter, he filed various pre-trial motions, including motions to suppress evidence and statement. Following a hearing, the trial court denied defendant's motions to suppress.

On November 9, 2020, defendant withdrew his plea of not guilty and, after being advised of his rights, pled guilty as charged. In accordance with the plea agreement, the trial court sentenced defendant to five years imprisonment at hard labor, suspended the sentence, and placed defendant on active probation for three years subject to various conditions. Defendant now appeals.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, defendant asserts that the trial court erred in denying his motion to suppress evidence. He contends that the information provided to the police by the two informants was insufficient to justify the stop of defendant's vehicle and that all evidence seized as a result of that illegal stop should be suppressed.

At the September 2, 2020 suppression hearing, Agent John Wiebelt of the Jefferson Parish Sheriff's Office testified regarding the circumstances surrounding the stop and subsequent arrest of defendant on May 6, 2019. Agent Wiebelt recounted that in April of 2019, while participating in a joint narcotics operation with the Homeland Security Investigations Team, the agents received information that defendant was distributing quantities of cocaine from a residence located at 1930 South I-10 Service Road in Metairie. The agents were also advised that defendant drove a Chevrolet Silverado with a specific license plate number. During the course of this investigation, Agent Wiebelt established that defendant "had ties" to that residence and that the identified vehicle was registered to him. Further, Agent Wiebelt relayed that during the agents' surveillance, they saw defendant "freely come and go" between the residence on the I-10 Service Road and another residence west of that house located at 535 Hesper Avenue in Metairie.

According to Agent Wiebelt, on May 6, 2019, he received information from a different source that defendant would be departing his home between 8:00 p.m. and 8:30 p.m. with the specific intent to distribute a quantity of cocaine to someone. Pursuant to that information, Agent Wiebelt and other officers set up surveillance on defendant's residence. The officers observed defendant go back and forth between the two residences in question, exit the residence at 1930 South I-10 Service Road between 8:00 p.m. and 8:30 p.m., enter his vehicle, and depart that location.

Shortly thereafter, the officers conducted a stop of defendant's vehicle using a "box maneuver."[1] During his testimony, Agent Wiebelt acknowledged that he did not see defendant commit any traffic violation but decided to conduct an

---

[1] Agent Wiebelt described that one officer drove in front of defendant's vehicle, with his lights activated, and stopped, which caused defendant to stop. Other officers stopped their vehicles behind and possibly to the side of defendant's vehicle.

"investigatory stop based on the information [he] had received and his actions corroborating that." Once the vehicle was stopped, Agent Wiebelt asked defendant and the other two occupants to exit the vehicle. After they complied with his request, Agent Wiebelt observed, from his position standing by the open doorway to the vehicle, "a cup in the cup holder on the console, no lid, and had a quantity of cocaine in it in a bag."

At that point, a canine trained in the detection of narcotics arrived and "hit" on the vehicle. As a result, the possible cocaine was seized from the vehicle, and Agent Wiebelt performed a preliminary field test on the substance. Following a positive result for the presence of cocaine, Agent Wiebelt arrested defendant and conducted a search of his person incident to arrest. During this search, Agent Wiebelt located an additional quantity of cocaine, currency, and a cell phone, all of which were seized.

Agent Wiebelt then obtained search warrants for the two Metairie residences associated with defendant. He and other officers executed the warrants and found items of evidentiary value in both homes. Defendant was thereafter transported to the investigation bureau, and after being advised of and waiving his *Miranda*[2] rights, he provided a recorded statement, in which he claimed ownership of the seized cocaine and paraphernalia.

During the course of his examination, Agent Wiebelt answered affirmatively when asked whether the first informant had given him or another officer information in the past that led to the arrest and/or conviction of other persons. However, he acknowledged that he did not have personal knowledge of those arrests and/or convictions. Agent Wiebelt further stated that he worked with several other officers and agents in this investigation and that they shared

_____

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

information regarding the reliability of the informant. During his testimony, Agent Wiebelt asserted that he did not know the first informant's motivation or whether he had been paid for his information.

With regard to the other source, Agent Wiebelt testified that the second informant had not given him information in the past that led to the arrest and/or conviction of other persons, and he did not know if that informant had provided such information to other officers. Further, Agent Wiebelt stated that he did not know if the second informant was motivated by the promise of money or assistance in criminal cases.

Agent Jose Garcia, a deportation officer with Immigration and Customs Enforcement, also testified at the suppression hearing about his involvement in the case, which consisted of translating defendant's interview with Agent Wiebelt. Agent Garcia stated that he translated defendant's *Miranda* rights into Spanish, that defendant initialed next to each right on the form and signed the form, indicating that he understood his rights and wished to waive them. Further, Agent Garcia maintained that neither he nor Agent Wiebelt forced, coerced, threatened, or induced defendant to waive his rights.[3]

Following argument of the State and defense counsel, the court deferred ruling and gave both parties time to submit memorandum. Thereafter, the trial court denied defendant's motions to suppress evidence and statement. Defendant now challenges the trial court's denial of his motion to suppress evidence.

On appeal, defendant contends that the information provided to the police by the two informants was insufficient to justify the stop of defendant's vehicle and that all evidence seized as a result of that illegal stop should be suppressed. He

---

[3] In conjunction with the agents' testimony, the State offered several exhibits at the suppression hearing. Specifically, the State presented the applications for and search warrants for both residences associated with defendant, defendant's recorded statement and the admonition and waiver of rights form, the affidavit in support of and search warrant for the seized cell phone, and the affidavit in support of and the seizure warrant for the currency.

points out that the information provided by the informants was not corroborated, that the officers did not observe defendant commit a traffic violation or any other illegal activity prior to the stop, and that the officer who testified at the suppression hearing could not provide any information as to the informants' veracity, reliability, or basis of knowledge.

In response, the State asserts that the police had sufficient reasonable suspicion to conduct an investigatory stop of defendant and his vehicle. The State notes that the confidential informant's tip, along with the anonymous source's tip, provided the agents with the requisite reasonable suspicion to conduct the stop because the confidential informant was reliable, the agents substantially corroborated the two tips, and the anonymous source's tip contained predictive information regarding defendant's future behavior.

The Fourth Amendment of the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect individuals against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate those reasonably suspected of engaging in criminal activity is recognized by La. C.Cr.P. art. 215.1, as well as by state and federal jurisprudence. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Belton*, 441 So.2d 1195 (La. 1983), *cert. denied*, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The *Terry* standard, as codified in La. C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions. *State v. Molette*, 11-384 (La. App. 5 Cir. 11/29/11), 79 So.3d 484, 489. Reasonable suspicion, which is something less than probable cause to arrest, requires that police officers have sufficient knowledge of facts and circumstances to justify an infringement of the individual's right to be free from government interference. Absent reasonable suspicion, an investigatory

stop is illegal, and the evidence seized as a result is inadmissible. *State v. Leonard*, 11-363 (La. App. 5 Cir. 11/15/11), 80 So.3d 535, 542, *writ denied*, 12-14 (La. 8/22/12), 97 So.3d 356.

Under certain circumstances, an informant's tip can provide reasonable suspicion to detain and question a person. *State v. Francois*, 04-1147 (La. App. 5 Cir. 3/29/05), 900 So.2d 1005, 1010. Generally, the informant's tip must contain predictive information regarding the future behavior of the reported suspect, and the tip must be corroborated. *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *State v. Robertson,* 97-2960 (La.10/20/98), 721 So.2d 1268, 1270; *State v. Francois*, *supra*. Whether an informant's tip establishes reasonable suspicion to conduct an investigatory stop is considered under the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *State v. Barker*, 19-223 (La. App. 5 Cir. 12/11/19), 285 So.3d 581, 588.

This Court has held that a tip by an informant can supply reasonable suspicion if it accurately predicts future conduct in sufficient detail to support a reasonable belief that the informant had reliable information regarding the illegal activity. The informant's ability to predict the person's future behavior goes to the informant's reliability because it demonstrates inside information and a special familiarity with the person's affairs. *State v. Murphy*, 14-437 (La. App. 5 Cir. 10/15/14), 181 So.3d 1, 7. If an informer's tip accurately predicts the offender's future behavior, it gains an additional modicum of reliability. *State v. Holmes*, 08-719 (La. App. 5 Cir. 3/10/09), 10 So.3d 274, 279, *writ denied*, 09-816 (La. 1/8/10), 24 So.3d 857.

In applying the totality of the circumstances analysis, independent corroboration by police investigation of the details of an informant's tip is valuable. Even a non-predictive anonymous tip coupled with either police

corroboration or independent police observation of unusual suspicious conduct can supply police with the necessary reasonable suspicion to temporarily detain the suspect. If the tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. *State v. Barker*, 285 So.3d at 588.

In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. La. C.Cr.P. art. 703(D). A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of that discretion. *State v. Rogers,* 09-13 (La. App. 5 Cir. 6/23/09), 19 So.3d 487, 493, *writ denied,* 09-1688 (La. 4/9/10), 31 So.3d 382.

Having thoroughly considered the circumstances of this case, the arguments of counsel, and the applicable jurisprudence, we find no abuse of discretion in the trial court's denial of defendant's motion to suppress evidence. In the present case, the officers obtained information from two sources regarding defendant. The first informant advised the officers that defendant was distributing quantities of cocaine from a residence located at 1930 South I-10 Service Road in Metairie.[4] The agents were also advised that defendant drove a Chevrolet Silverado with a specific license plate number. The investigating officers corroborated defendant's connection to the specified residence and vehicle and observed him at that address and driving the vehicle.

---

[4] During his testimony at the suppression hearing, Agent Wiebelt answered affirmatively when asked whether the first informant had given him or another officer information in the past that led to the arrest and/or conviction of other persons. However, he acknowledged that he did not have personal knowledge of those arrests and/or convictions. Agent Wiebelt further stated that he worked with several other officers and agents in this investigation and that they shared information regarding the reliability of the informant. The determination of whether probable cause exists for an arrest or reasonable suspicion for an investigatory stop is a purely objective inquiry that takes into account all of the information known collectively to the law enforcement personnel involved in the investigation even if some of the information is not communicated to the arresting officer. Thus, "the arresting officer need not have talked to the informants or had any knowledge of their reliability" before acting on information provided by other officers. *State v. Elliott*, 09-1727 (La. 3/16/10), 35 So.3d 247, 251.

On May 6, 2019, Agent Wiebelt received information from a second source that defendant would be departing his residence that evening between 8:00 p.m. and 8:30 p.m. with the specific intent to distribute a quantity of cocaine to someone. Pursuant to that specific information, the officers set up surveillance on defendant's residence. They observed defendant go back and forth between the two residences associated with him, and then, in accordance with the information provided by the second source, the agents observed defendant exit the specified residence within the provided time frame of 8:00 p.m. and 8:30 p.m., enter the described vehicle, and depart the area. Shortly thereafter, the officers effected a stop on defendant's vehicle using a box maneuver.[5] After defendant exited the vehicle, Agent Wiebelt saw, in plain view, what appeared to be cocaine in a cup in the center console of the car, which further corroborated the information given by the informants.

Despite the fact that the officers did not observe defendant commit a traffic violation or any other criminal activity, we find that they had sufficient reasonable suspicion to conduct the stop.[6] We acknowledge that each tip, by itself, would not have supported the stop of defendant; however, the combination of the two tips, one of which contained predictive information, along with police corroboration of the information, gave the officers the requisite reasonable suspicion to conduct the stop.

---

[5] We note that, under the circumstances of this case, the officers' method of stopping defendant did not elevate the matter to an unlawful arrest. The vast majority of courts have held that police actions in blocking a suspect's vehicle and approaching with weapons ready, and even drawn, does not constitute an arrest *per se*. In *State v. Carter*, 11-758 (La. App. 5 Cir. 5/31/12), 96 So.3d 1283, 1290-91, this Court recognized that investigatory stops necessarily involve an element of force or duress and the temporary restraint of a person's freedom, and such stops may be accompanied by features normally associated with an arrest. *See also State v. Leonard,* 80 So.3d at 543-44.

[6] Police do not have to observe what they know to be criminal behavior before investigating. *State v. Morales*, 12-454 (La. App. 5 Cir. 12/18/12), 125 So.3d 1141, 1146. Police officers have the authority to stop someone in a public place if they reasonably suspect that a person is about to commit an offense, even though no illegal activity has taken place, and no one has approached the defendant's vehicle to purchase drugs. *State v. Francois*, 900 So.2d at 1011.

Having found that the stop of defendant was legal, we find no merit to his argument that that the evidence seized as a result of that stop should be suppressed as fruit of the poisonous tree. Accordingly, we find no abuse of discretion in the trial court's denial of defendant's motion to suppress evidence.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, defendant contends that the trial court erred in denying his "Opposition to State's Motion to Seal and Request for Full Disclosure."

In the present case, the State filed a motion to seal, requesting that the trial court place its "Notice of Additional Information" under seal. In this notice, the State disclosed that an officer named in the police report in defendant's case was under investigation concerning an allegation of excessive force in an unrelated matter. The trial court granted the State's motion to seal. In response, defendant filed an "Opposition to State's Motion to Seal and Request for Full Disclosure." In that opposition, counsel asserted that the State's notice had great bearing on the credibility of a State witness and that the State was attempting to suppress the information. Defense counsel asked the court to conduct a hearing on the matter and to thereafter order full disclosure of the information bearing on the credibility of the State's case. After a hearing, the trial court denied defendant's request. Defendant now challenges this ruling, contending that it effectively denied his right to attack the credibility of the State's witness due to the exculpatory evidence being withheld prior to the motion to suppress.

In the present case, defendant pled guilty. A guilty plea normally waives all non-jurisdictional defects in the proceedings leading up to the guilty plea and precludes review of such defects either by appeal or post-conviction relief. *State v. Nelson*, 17-634 (La. App. 5 Cir. 5/23/18), 247 So.3d 222, 226. However, a defendant may be allowed appellate review if at the time he enters a guilty plea, he

21-KA-166                                                    9

expressly reserves his right to appeal a specific adverse ruling in the case under *State v. Crosby,* 338 So.2d 584, 588 (La.1976). *See State v. Turner*, 09-1079 (La. App. 5 Cir. 7/27/10), 47 So.3d 455, 461.

In the present case, the record reflects that defendant did not reserve his right to seek review of this issue. Specifically, the transcript of the guilty plea proceeding and the acknowledgment and waiver of rights form clearly show that the only ruling defendant preserved for review was the trial court's denial of his motion to suppress evidence. Other than the reference in his motion for appeal, there is no suggestion in the record that defendant reserved his right to appeal the trial court's decision on his request for full disclosure pursuant to *State v. Crosby*, *supra*. As such, defendant is not entitled to appellate review on this issue.

## ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, defendant contends that he should not have to pay a duplication of records cost when both the 24th Judicial District and the Fifth Circuit are paperless courts and the information could electronically be transferred.

In the present case, the record does not contain any reference to the complained of cost. Defendant raises this issue for the first time on appeal. A new issue that has not been submitted to the trial court for consideration usually cannot be raised for the first time on appeal. *State v. Darensbourg*, 06-572 (La. App. 5 Cir. 12/27/06) 948 So.2d 1128, 1131, *writ denied*, 07-317 (La. 11/9/07), 967 So.2d 495. Generally, a court of appeal will not consider an issue which is raised for the first time on appeal. *State v. Johnson*, 19-422 (La. App. 5 Cir. 1/29/20), 290 So.3d 301, 304.

Accordingly, this issue is not properly before this Court for review.

## ERRORS PATENT REVIEW

Lastly, we have reviewed the record for errors patent and have found none.

*See* La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990).

Accordingly, for the reasons set forth herein, we affirm defendant's conviction and sentence.

## AFFIRMED

21-KA-166                                                      11

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 1, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**21-KA-166**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE NANCY A. MILLER (DISTRICT JUDGE)
MATTHEW R. CLAUSS (APPELLEE)     THOMAS J. BUTLER (APPELLEE)     A. BRUCE NETTERVILLE (APPELLANT)

### MAILED
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
JOSHUA K. VANDERHOOFT (APPELLEE)
ASSISTANT DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053